IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAFFINEE MCNEILL, as next friend
an guardian of: J.B.
    *Plaintiff,*

v.

TRIMPER'S RIDES OF OCEAN CITY, INC., *et al*,
    *Defendant.*

Civil Action No. ELH-14-2325

**MEMORANDUM**

On July 22, 2014, plaintiff Raffinee McNeill, as next friend and guardian of J.B., a minor, filed a negligence suit against defendants Trimper's Rides of Ocean City, Inc. ("Trimper's") and Windsor Resort, Incorporated ("Windsor"). ECF 1.[1] The suit, later amended (ECF 54, Amended Complaint), is based on an incident involving plaintiff's son, J.B., which occurred on June 28, 2012, at Trimper's, an amusement park in Ocean City, Maryland. J.B., who was two and a half years of age at the time, was struck and injured by a moving ride. The circumstances that led to the occurrence are at issue.[2]

---

[1] Jurisdiction is founded on diversity of citizenship. *See* 28 U.S.C. § 1332.

[2] The Amended Complaint (ECF 54) is completely devoid of any allegations as to Windsor, apart from the general assertion that the ride operator, Tasha Purnell, "was an employee of defendants . . . ." ECF 54, ¶ 13. Windsor has not challenged the suit on this basis. Both Trimper's and Windsor admit that Purnell was an employee and agent of each defendant. *See* ECF 57-2, at 1-6, Windsor's Response to Requests for Admission; ECF 57-2 at 7-12, Trimper's Response to Requests for Admission.

According to plaintiff, defendants negligently failed to insure that J.B. was safely out of the way of the danger of moving amusement vehicles before putting the amusement ride into motion. She maintains that defendants were obligated to make sure that all ride participants were properly restrained on the ride vehicle, and that the tracks were clear of any danger.

In their Answer to the original Complaint (ECF 24),[3] defendants asserted, *inter alia*, affirmative defenses of assumption of the risk and contributory negligence. They also alleged that suit was barred by limitations.

Now pending is plaintiff's motion for summary judgment (ECF 57), supported by a memorandum of law ("Memo," ECF 57-1) (collectively, the "Motion") and several exhibits. Defendants oppose the Motion (ECF 62, "Opposition"), supported by several exhibits.[4] Plaintiff has filed a Reply. *See* ECF 63). And, with leave of court (ECF 66), defendants have filed a Surreply. *See* ECF 64, ECF 66.

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall DENY plaintiff's Motion.

### I. Factual Summary

On the afternoon of June 28, 2012, two-year-old J.B. and his cousins went to Trimper's to enjoy the rides. ECF 54, ¶ 8, Amended Complaint. J.B. was in the care of his uncle, Stephen Bailey. *Id.* ¶ 8. At about 3:15 p.m., J.B. "was riding the 'Hampton I' ride, at Trimper's Rides." *Id.* ¶ 10. It is "a ride for young children on which miniature vehicles ride along a circular track."

---

[3] No answer was ever filed to the Amended Complaint.

[4] Both sides have submitted excerpts of deposition testimony, with some duplication. Where there are duplicate submissions, I have generally cited to only one of the exhibits.

*Id.* ¶ 11. The ride operator, Tasha Purnell, an employee of defendants, *id.* ¶ 23, "abruptly stopped the ride to let [a distressed] child off." *Id.* ¶ 12. J.B., "thinking the ride was over since it had stopped, got out of his car." *Id.* ¶ 14. Then, the ride operator re-started the ride, "without first confirming: (i) that the tracks were clear and (ii) that all passengers of the rides were secure . . . ." *Id.* ¶ 15. At that time, "one of the ride vehicles slammed" into J.B. *Id.* ¶ 15.

Sean Donovan, defendants' "head supervisor," who worked for defendants for over eight years, was deposed as defendants' corporate designee. ECF 57-4 ("Donovan Depo.") at 6. Donovan responded to the scene but did not witness the events. *Id.* at 5, 7. He described the ride as one with six vehicles, designed for small children. *Id.* at 10. It has a "motor in the center, the arms come out from the motor and different vehicles [are] attached to those and [it] goes around. . . ." *Id.*

According to Donovan, ride operators receive "specialized training" for rides for younger children. *Id*. at 11. He stated that ride operators are trained to watch the way children move and in respect to loading them on rides, because young children are "unpredictable . . . ." *Id.* at 12. He explained that young children often "go behind the vehicle where it connects, where we don't want them to go . . . [Y]ou follow the child." *Id.*

Donovan stated that the ride operator is supposed to do a "[s]afety walk around the ride to make sure the seat belts are hooked up and [check the] blind spot." *Id.* at 19. In addition, if a ride is stopped, a safety check must be performed before the ride is restarted. *Id.* at 21-22. This includes "checking the seat belts . . . ." *Id.* at 22; *see also* ECF 57-7; ECF 62-7 (Employee Training Guide).

Trimper's training guide advises that "[a]ll rides have blind spots." ECF 62-7; ECF 57-7. Moreover, it identifies as an emergency "[a] child standing or attempting to get out of their car." *Id.* Donovan learned from Ms. Purnell that J.B. "undid his safety belt." *Id.* at 21. And, Donovan indicated that if Purnell had seen J.B. undoing his seat belt, she was supposed to "[s]top the ride." *Id.* Donovan noted on the incident report that J.B. was "struck by ride." *Id.* at 16.

Apparently, neither side has been able to locate the ride operator, Tasha Purnell. *See* ECF 62 at 3 n.2. However, defendants maintain that they are continuing to make efforts to locate Ms. Purnell and, in this regard, they point out that a trial date has not yet been set.

Ms. McNeill, J.B.'s mother, was not present at the time of the occurrence. Steve Bailey, J.B.'s uncle, is currently the sole available eyewitness in the case.

At Mr. Bailey's deposition, he recalled that the ride on which J.B. was situated came to a stop because another child started crying. ECF 62-1 ("Bailey Depo."), at 5; *see also* ECF 62-1 at 7; ECF 62-1 at 8. He testified, *id.* at 6, lines 1-3: "I guess in the meantime [J.B.] must have got off, thought the ride was over with. And that's how the accident happened." Mr. Bailey did not know what J.B. was doing while the other child was removed from the ride, because the ride was on his "blind side . . . ." ECF 62-1 at 9. He added, *id.* at 10: "Because the way the ride was sitting on the blind side, I couldn't see [J.B.]."

According to Bailey, as soon as the other child was removed from the ride, the ride operator immediately started the ride "back up." ECF 62-1 at 11. It took her only "a few seconds to do so." *Id.* The following deposition question was also posed to Mr. Bailey: "You

4

don't know whether [J.B.] took his seat belt off, stood up, got off, and then got knocked down?" Answer: "I don't know." ECF 62-1 at 12.

## II. Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a). It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert.*

*denied*, 541 U.S. 1042 (2004). However, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Of import here, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits or conflicting deposition testimony, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. Put another way, it is not the province of the court to resolve factual disputes.

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Anderson*, 477 U.S. at 248. *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

### III. Discussion

### A.

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti*"). *See, e.g.*, *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007); *Phillip Morris, Inc. v. Angeletti*, 358 Md. 689, 744, 752 A.2d 200, 230 (2000). Because the alleged events took place in Maryland, the substantive tort law of Maryland governs plaintiff's negligence claim. *See Hauch v. Connor*, 295 Md. 120, 123-24, 453 A.2d 1207, 1209 (1983).

In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131-32, 916 A.2d 257, 270-71 (2007)) (emphasis omitted); *see Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and

damages.'") (quoting *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)) (alterations in *Schultz*).

"[T]he duty of care owed by an owner or occupier of a premises is a function of his legal relationship to the person entering on the premises." *Garner v. Supervalu, Inc.*, 396 Fed. App'x 27, 29 (4th Cir. 2010). *See, e.g.*, *Casper v. Chas. F. Smith & Son, Inc.*, 316 Md. 573, 578, 560 A.2d 1130, 1133 (1989) (the duty of an owner or occupier of land "depends upon the status of the plaintiffs at the time of the accident"). Specifically, in Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (*i.e.* a business invitee), a licensee by invitation (*i.e.*, a social guest), a bare licensee, or a trespasser. *Baltimore Gas & Elec. Co. v. Lane*, 338 Md. 34, 44, 656 A.2d 307, 312 (1995); *Wagner v. Doehring*, 315 Md. 97, 101-02, 553 A.2d 684, 686 (1989); *Rowley v. Mayor of Baltimore*, 305 Md. 456, 464-65, 505 A.2d 494, 498 (1986).

The highest duty is owed to a business invitee, defined as "'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 334, 859 A.2d 266, 273 (2004) (citations omitted); *see Lane*, 338 Md. at 44, 656 A.2d at 312; *Howard County Bd. of Educ. v. Cheyne*, 99 Md. App. 150, 155, 636 A.2d 22, 25 (1994), *cert. denied*, 335 Md. 81, 642 A.2d 192 (1994).

As to an invitee, an owner or occupier of land has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. *Casper*, 316 Md. at 582, 560 A.2d at 1135; *see Lane*, 338 Md. at 44, 656 A.2d at 312 (stating

owner owes "a duty of ordinary care to keep the property safe for the invitee"); *Evans v. Hot Shoppes, Inc.*, 223 Md. 235, 239, 164 A.2d 273, 276 (1960); *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997); *Pahanish v. Western Trails, Inc.*, 69 Md. App. 342, 355, 517 A.2d 1122, 1128 (1986). The duties of a business invitor include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers. *Tennant*, 115 Md. App. at 388, 693 A. 2d at 374.

In *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637 (D. Md. 2012), Judge Blake of this Court explained: "The duty owed to an invitee is 'to use reasonable and ordinary care to keep [the] premises safe for the invitee and to protect [the invitee] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety will not discover.'" *Id.* at 641 (quoting *Deboy v. City of Crisfield*, 167 Md. App. 548, 555, 893 A.2d 1189, 1193 (2006)) (modifications in *Deboy*). *Accord Garner*, *supra*, 396 Fed. App'x at 29; *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265, 267 (1972); *see also Pahanish*, 69 Md. App. at 355, 517 A.2d at 1128 ("At common law, the landowner's duty to business invitees is to use reasonable and ordinary care to keep his premises in a safe condition and to protect invitees against the dangers of which the landowner is aware or which, with reasonable care, he could have discovered."). However, the business invitor is not an insurer of the invitee's safety. *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965); *Lexington Market Authority v. Zappala*, 233 Md. 444, 446, 197 A.2d 147, 148 (1964).

9

To be sure, and as defendants concede, defendants' "policies may be evidence of a breach . . ." of the duty of care. ECF 64-1 at 5. But, "mere violation of those policies is not dispositive on the issue." *Id.* By analogy, in Maryland, a statutory violation is prima facie evidence of negligence. *Rivers v. Hagner Management Corp.*, 182 Md. App. 632, 653, 959 A.2d 110, 123 (2008); *see generally Gourdine v. Crews*, 405 Md. 722, 755, 955 A.2d 769, 789 (2008). But, violation of a statute is "simply evidence of negligence." *Joseph v. Bozzuto Management Co.*, 173 Md. App. 305, 327, 918 A.2d 1230, 1243 (2007). And, to establish liability, the statutory violation must be the proximate cause of injury. *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 80, 835 A.2d 616, 621-22 (2003).

**B.**

Plaintiff asserts entitlement to summary judgment, claiming that there is no dispute of material fact as to how the injury occurred. According to plaintiff, "the ride operator failed to insure that J.B. was buckled and safely fastened before starting the ride," ECF 57-1 at 7, and this act "constitutes failure to use a degree of care which an ordinarily prudent person would exercise in like circumstances and in a like situation." *Id.* She also asserts that the "ride operator had complete and exclusive control of the ride" and failed to exercise due care, because the ride operator failed "to discover that J.B. was on the platform . . . ." *Id.*

In the Motion, plaintiff argues that defendants' affirmative defenses of assumption of the risk and contributory negligence are inapplicable to the facts of this case. Similarly, plaintiff challenges the limitations defense. Because J.B. was only two years of age at the time of the incident, plaintiff claims that, as a matter of law, he could not be contributorily negligent. *See State v. Barlly*, 216 Md. 94, 102, 140 A.2d 173, 177 (1958). In addition, plaintiff observes that,

under § 10-910 of the Courts and Judicial Proceedings Article of the Maryland Code, any negligence on the part of the child's parent (or caretaker) cannot be imputed to the child.

Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. The incident occurred in 2012, and suit was filed in 2014. Clearly, on its face, the suit is not barred by limitations. Moreover, in defendants' Opposition, they assert: "Defendants acknowledge that the affirmative defenses of statute of limitations, contributory negligence, and assumption of the risk do not apply on the present record." ECF 62 at 2 n.1.

In her Reply, Ms. McNeill asserts that "the Opposition fails to show why Ms. McNeil [sic] is not entitled to summary judgment with respect to defendant's affirmative defenses of: assumption of the risk, contributory negligence, and statute of limitations . . . ." ECF 63 at 1. Plaintiff also asserts that she has "neither invoked the doctrine [of *res ipsa loquitur*] nor relied on it." ECF 63 at 8, Reply.

In view of defendants' concession that the affirmative defenses cited above do not apply here, defendants may not rely on them at trial; they have been abandoned. However, defendants' concession does not create a basis for an award of summary judgment in favor of plaintiff. In other words, the inapplicability of the defenses does not establish, as a matter of law, that defendants were negligent. Rather, plaintiff must prove the elements of negligence.

In claiming that there are no disputes of material fact, plaintiff focuses only on the deposition testimony helpful to her side. She claims that "Mr. Bailey testified that, without making sure that the other child riders were safely fastened and clear of the cars, re-checking the safety belts, walking around the ride, or otherwise checking that the track was clear the ride

operator . . . re-started the ride, after which time J.B. was struck." ECF 63 at 6. She cites to pages 34, 36-37, and 38 of Mr. Bailey's deposition. But, plaintiff overlooks, for example, that Mr. Bailey candidly agreed that he was "not paying any attention to the operator. . . ." ECF 57-3 at 12. Nor did he know what J.B. was doing when the other child was removed from the ride, because he could not see J.B. *Id.* at 10. Rather, he made a "guess" that J.B. "got off" the ride when it came to stop for the other child. *Id.* at 9.

To be sure, plaintiff may prevail at trial. But, this is not a res ipsa loquitur case. As indicated, in the posture of this case, the evidence must be viewed in the light most favorable to defendants as the non-movants. I cannot resolve factual disputes as to how the incident occurred. In my view, this case is quintessentially one for the factfinder to determine how the accident occurred, whether defendants breached the standard of care, and whether their negligence was the proximate cause of injury.

A separate Order follows.


Date: September 11, 2015                              /s/
                                                      Ellen L. Hollander
                                                      United States District Judge